## 57504. REESE v. ROBINS FEDERAL CREDIT UNION.

ARGUED MARCH 8, 1979 — DECIDED APRIL 24, 1979 — REHEARING DENIED MAY 14, 1979 — Before Judge McCombs.

*Willie Abrams, Kathleen Lillis,* for appellant.

*Armour & Cielinski, Michael P. Cielinski,* for appellee.

DEEN, Chief Judge.

1. The purpose of the regulations (12 CFR § 226.1 (a) (2) et seq.) is, as there stated "to assure that every customer who has need for consumer credit is given

meaningful information with respect to the cost of that credit which, in most cases, must be expressed in the dollar amount of finance charge, and as an annual percentage rate computed on the unpaid balance of the amount financed." 12 CFR § 226.6 provides in part: "[W]here the terms 'finance charge' and 'annual percentage rate' are required to be used, they shall be printed more conspicuously than other terminology required by this part and all numerical amounts and percentages shall be . . . legibly handwritten."

(a) It is contended that the promissory note is void because the 19 prominently boxed statements preceding the language of the note and which give the "terminology required by this part" happen not to have the words "ANNUAL PERCENTAGE RATE" headlined in letters as large as those used for the headlined "FINANCE CHARGE", although equally as large or larger than the other headlined boxes. In the box under this headline the statement "12%" is written in large legible writing completely filling the box. There has certainly been a good faith effort to fit all the information required into prominently headlined boxes and it is difficult to see, given obvious physical space requirements, how the format used could have been improved upon. We find no violation in this category.

(b) 12 CFR § 226.8(b) (3) requires that as a term of an installment payment promissory note the number, amount, and due dates or periods of payments scheduled to repay the indebtedness be disclosed. Included in the headlined information at the top of this note are statements that the indebtedness is to be repaid in 36 monthly payments of $66.71 beginning July 17, 1977, and on the same day of each month thereafter until paid. This adequately meets disclosure requirements. The fact that the maker of the note requested automatic repayment through a payroll deduction plan in the amount of $33.36 to be repaid each payday (paydays being every 14 days) represents a convenience to the debtor, not an ambiguity in the requirements of note payment. A deposition relating to this method of payment concludes that the interest rate under this payroll deduction plan would be slightly less than that shown on disclosure statement.

Nothing in the Truth in Lending Act prohibits the parties from mutually agreeing to pay or receive money under a payroll deduction plan, and the result might well be as stated in Code § 20-116. That question, however, is not before us. It is obvious that the use of automatic payroll deductions did not result in any usurious charge.

2. It is further contended that the appellee, a federal credit union, demanded attorney fees in excess of those allowed by Code § 20-506 and in so doing committed usury in that the excess amount should be added to other amounts charged as interest and, if this is done, the resulting figure would slightly exceed the 12% per year stated annual interest rate allowable under 12 USCA § 1757 (5) (A) (vi), so that the resulting usurious interest would require the voiding of the entire interest on the note.

This contention is based on a complicated process of reasoning which ignores certain facts. It is undisputed that there is no provision for the automatic assessment of attorney fees in the promissory note in question, from which it follows that the seeking of such fees under Code § 20-506 is not a "charge" under the Truth in Lending Act. Anderson v. Sou. Discount Co., 582 F2d 883 (1). "The taint of usury does not result from payment, but from agreement, performed or unperformed." *Martin v. Johnson,* 84 Ga. 481, 486. What happened here was that, after default and after the account had been turned over to an attorney, a letter announcing an intention to seek 15% of the amount owing as attorney fees if the debt were not paid in full within 10 days as required by Code § 20-506 was mailed to the debtor on January 10, 1978. There was no reply. The account was turned over to other attorneys who on January 31, 1978, sent another notice of attorney fee claim. Following this the debtor paid $150 on the debt of slightly over $1,800, which payment was credited first to interest and then to principal. The suit was filed March 3, 1978 and prayed for attorney fees based on the first letter in the sum of $278.81. If this amount was, as contended, some $5 too much in view of the payment of a $150 payment received in the interim, that is a matter to be urged before the trial court. The overage, if it existed, is not interest but, as pointed out in *Moore v. Trailmobile,*

*Inc.,* 94 Ga. App. 892 (96 SE2d 529) (1957) a species of unliquidated damages.

The grant of summary judgment to the plaintiff was not error.

*Judgment affirmed. McMurray, P. J., and Shulman, J., concur.*